IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT L. WOODARD** | : | **CIVIL ACTION** |
| *Plaintiff/Appellant* | : | |
| | : | **NO. 15-3671** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| *Defendant/Appellee* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                OCTOBER 11, 2016

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is an appeal filed by Appellant Robert L. Woodard, ("Appellant" or "Debtor") pursuant to 28 U.S.C. §158(a), contesting the final judgment Order dated June 18, 2015, entered in favor of Defendant/Appellee City of Philadelphia, ("Appellee" or "City"), by the Honorable Judge Eric L. Frank, United States Bankruptcy Court for the Eastern District of Pennsylvania. The issues in this appeal have been fully briefed, and the matter is ripe for consideration.

For the reasons set forth herein, Appellant's appeal is denied, and the judgment of the Bankruptcy Court is affirmed.[1]

---

[1] In light of the factual and procedural history of this matter, outlined *infra*, it appears that the time for Debtor to challenge either the City's receipt and retention of the sale proceeds at issue or the validity of the underlying liens/judgments has long passed. The liens at issue were satisfied by the proceeds of the Debtor-requested and Bankruptcy Court-approved sale of the Property (defined later) on October 21, 2005. Though Debtor claims to have been unaware of the existence of the liens at issue during the initial period of his bankruptcy proceedings, he cannot reasonably argue a continued ignorance of them once the sale of the Property and the disbursement of the proceeds of the sale occurred. Debtor readily admits he was provided a settlement sheet which disclosed all of the now challenged liens, at or about the time of the closing. Yet, at no time in the nearly eight years between the sale of the Property and the filing of the motion to reopen his bankruptcy case did Debtor assert any challenge to the validity of these paid off liens. Debtor never filed any such claim, and the time for doing so would appear long passed.

**PROCEDURAL AND FACTUAL BACKGROUND**[2]

On March 20, 2001, Debtor filed a voluntary Chapter 13 bankruptcy petition. At the time, Debtor owned several properties located in the City of Philadelphia, including one at 1015 South 18th Street, Philadelphia, Pennsylvania, 19146 (the "Property"). Four proofs of claim were filed in Debtor's bankruptcy case. Of these, one claim was disallowed and another was stricken, as docketed in error. As to the other two proofs of claim, one was filed by First Union National Bank ("First Union") and the other by the City. Both proofs of claim were for delinquent real estate taxes on the multiple properties then owned by Debtor.

Specifically, First Union, as Trustee for certain bondholders, filed a secured proof of claim in the amount of $41,159.73. After Debtor objected to this claim, the Bankruptcy Court entered an Agreed Order allowing First Union's secured claim in the reduced amount of $27,802.84. The Agreed Order delineated the allowed amount of First Union's secured claim with respect to each of Debtor's properties. With respect to the Property, the claim amount allowed was in the amount of $4,204.20. On July 9, 2001, the City filed a secured claim in the amount of $5,764.62. For reasons unclear, the claim amount allowed was $1,134.86.[3]

On April 29, 2003, the Bankruptcy Court confirmed Debtor's Amended Chapter 13 Plan (the "Confirmed Plan"). The Confirmed Plan required Debtor to make monthly payments to the Chapter 13 Trustee in the amount of $250.00 per month for nearly the entire duration of the plan. It also provided that the Property would be sold by Debtor and that the proceeds would be applied "towards the Class Two claims," to satisfy the secured claims for real estate taxes, and

---

[2] These facts, which are mostly undisputed, are taken from the Bankruptcy Court opinion and the Stipulation of Facts submitted jointly by the parties to the Bankruptcy Court. To the extent any fact is disputed, such dispute is noted.

[3] The Confirmed Plan refers to these Class Two Claims as "[t]he secured claims for real estate taxes and water and sewer liens held by First Union National Bank and the City of Philadelphia."

water and sewer liens. Besides the debts owed to First Union, the Confirmed Plan did not provide for any other secured claims other than the "real estate taxes and water and sewer liens" owed to the City.

On June 6, 2005, Debtor signed an *Agreement of Sale* to sell the Property for $100,000.00; a sale price that exceeded the amount of the secured claims filed by First Union and the City attributable to the Property. On June 8, 2005, Debtor filed a *renewed motion for permission to sell real estate and revise proofs of claim relating to the property*. In the motion, Debtor sought permission to sell the Property "free and clear of all liens," a motion consistent with the agreement of sale, attached to the motion, which required that the Property "be conveyed free and clear of all liens, encumbrances, and easements. . . ."

The Bankruptcy Court granted Debtor's motion, and approved the sale by Order dated July 19, 2005 (the "Sale Order"). The Sale Order provided, *inter alia*, that:

> the Debtor is granted permission to sell [the Property] . . . free and clear of all liens, pursuant to the terms of the Agreement of Sale. . . with the proceeds to be distributed to all taxes and other unavoidable liens of taxing authorities against the Property, and any additional settlement costs chargeable to the Debtor, with any remainder payable to the trustee. The proceeds of the sale shall be retained by the trustee into an account to be paid to filed and allowed claims and his commissions, and the balances shall be paid to the Debtor.

(Bankruptcy Record ("B.R.") Ex. 10, Stipulation of Facts at ¶13 and attached Ex. B). The Sale Order also required the title clerk to provide the Chapter 13 Trustee with a copy of the Settlement Sheet, and for the Trustee to "promptly notify the title company of his approval or objections to the sums to be disbursed." (*Id.*).

Settlement on the sale of the Property occurred on October 21, 2005. A copy of the settlement statement ("Settlement Statement") prepared by the title company was not provided to

3

Debtor or to the City until the day of the settlement. The Settlement Statement provided for payment of the unpaid real estate taxes owed to the City on the Property for years 1997-2004 in the amount of $3,118.36, and for the payment of the following charges:

| | |
|---|---|
| $20,007.43 | Payoff Judgment No. 89-02-00316 to the City |
| $1,079.00 | Payoff CE-04-07-73-0059 to the City |
| $13,460.95 | Payoff Lien #99070310/965053079/92040338/96053081 to the City |
| $2,539.05 | Payoff CE-94-08-32-05160 to the City |
| $498.00 | Payoff Judgment No. 030303159 to School District of Philadelphia |
| $54.00 | Payoff Judgment No. 941003166 to School District of Philadelphia |

(*Id.*, Stipulation of Facts at ¶14 and attached Ex. C).

On October 25, 2005, the City received seven (7) checks (the "Settlement Checks") from the title company in the aggregate amount of $40,756.79; a sum allocated by the City as follows:

| | |
|---|---|
| $3,118.36 | Real Estate Taxes for 1015 S. 18th St., Philadelphia, PA[4] |
| $20,007.43 | Common Pleas Judgment 89-05-00318 |
| $1,079.00 | Municipal Court Judgment CE-04-07-73-0059 |
| $13,460.95 | L&I Liens: 99070310/965053079/92040338/96053081 |
| $2,539.05 | Municipal Court Judgment CE-94-08-32-06160 |
| $498.00 | Fines and Fees |
| $54.00 | Use and Occupancy Taxes |

(*Id.*, Stipulation of Facts at ¶¶16-17, at attached as Ex. D).

Thereafter, Debtor successfully completed the Confirmed Plan and received a Chapter 13 discharge on April 19, 2006. The bankruptcy case was closed on April 27, 2006.

---

[4] Debtor does not dispute the propriety of the application of the first check in the amount of $3,118.36 toward real estate taxes owed on the Property.

4

On August 23, 2013, nearly seven-and-a-half years after the bankruptcy case was closed, and almost eight years after the settlement closing on the Property, Debtor moved to reopen his bankruptcy case, contending that the City had violated the automatic stay provisions and the Confirmed Plan, when it collected and retained sums from the sale proceeds that were in excess of the City's filed proof of claim.  The Bankruptcy Court granted the motion to reopen, and on October 3, 2013, Debtor filed an adversary complaint against the City of Philadelphia, Appellee.  On November 11, 2013, Debtor filed an amended complaint in which he asserted two claims: *to wit*; a violation of the Confirmed Plan (Count One); and a violation of the automatic stay (Count Two).  The City filed its answer on December 30, 2013.  On June 23, 2014, the Bankruptcy Court held a bench trial.  After suspending the matter for settlement discussions and after the parties submitted post-trial briefs, the Bankruptcy Court issued its decision by Memorandum dated June 18, 2015, and entered judgment in favor of the City.

### *The Bankruptcy Court Opinion*

In its memorandum opinion, the Bankruptcy Court made several findings.  First, it found no issue as to the checks in the amounts of $498.00 and $54.00 because "those payments were attributable to the School District of Philadelphia who is not a party to this proceeding." (B.R. Ex. 16, Bankruptcy Memorandum Opinion at 6).  It also found that Debtor had not met his burden to properly contest the validity of the underlying liens and judgments paid off as part of the Settlement Checks.  (*Id*. at 7, n. 7).  With regard to Debtor's contention that the City's receipt and retention of the checks constituted a violation of the automatic stay, the Bankruptcy Court held:

> I conclude that, although the Sale Order did not expressly grant relief from the automatic stay to permit the City to collect its secured claims that were not included in its proof of claim, the Sale Order effectively operated as an order granting limited relief from the automatic stay.  11 U.S.C. §362(d).  There is

5

>simply no other way to look at it.  I cannot interpret the Sale Order as authorizing the payment of specified claims secured by liens and then hold the recipient of those payments in contempt for violation of the automatic stay.  That would be absurd.  The Sale Order implicitly and necessarily modified the automatic stay.  Thus, the City's acceptance of the settlement proceeds on account of its unavoidable liens, authorized by the Sale Order, was proper.

(*Id*. at 9).  Finally, the Bankruptcy Court rejected Debtor's argument that the City's acceptance of the settlement checks violated the terms of Debtor's confirmed bankruptcy plan, and concluded that "if a lien is not addressed and treated in some fashion during the course of a bankruptcy case – either by being provided for in a reorganization plan, avoided pursuant to a Code avoidance power, disallowed in whole or part – it passes through the bankruptcy case unaffected." (*Id*. at 10).

**LEGAL STANDARD**

This Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. §158(a)(1).  Where a district court reviews a decision of the bankruptcy court on questions of fact, the court applies a clearly erroneous standard of review.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).  Under this clearly erroneous standard of review, the bankruptcy court's findings of fact must stand unless "the court is left with the definite and firm conviction that a mistake has been committed."  *Brager v. Blum*, 49 B.R. 626, 629 (E.D. Pa. 1985).  However, "the 'clearly erroneous standard' does not apply to questions of law.  Thus, where the appellate question presented is solely one of law, no presumption of correctness applies.  The bankruptcy judge's legal conclusions may not be approved without [the district court's] independent determination of the legal questions." *In re Gilchrist Co*., 410 F. Supp. 1070, 1074 (E.D. Pa. 1976) (citations omitted); *see also Universal Minerals, Inc. v. C.A. Hughes & Co*., 669 F.2d 98, 101-03 (3d Cir. 1981).  Therefore, a bankruptcy court's conclusions of law are subject to plenary review.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Kimmelman v. Port*

*Authority*, 344 F.3d 311, 316 (3d Cir. 2003).  Here, Debtor's appeal is primarily based on the Bankruptcy Court's conclusions of law and, therefore, his arguments are subject to plenary review.

**DISCUSSION**

In this appeal, Debtor essentially argues that the Bankruptcy Court erred in concluding that:  the Sale Order granted limited relief from the automatic stay; the payment of the liens from the sale proceeds did not violate the Confirmed Plan; the failure of the City to file a proof of claim for the liens that appeared in the title search and were identified in the Settlement Sheet at the time of closing did not bar the City from receiving and retaining payments from the sale proceeds sufficient to extinguish the liens; one of the liens paid was for a post-petition judgment; and the argument regarding the School District lacked merit. Each of these arguments is addressed below.

### *Debtor's Claim for Violation of the Automatic Stay*

In the amended complaint, Debtor asserted a claim for violation of the Bankruptcy Code's automatic stay provisions.  In denying this claim, the Bankruptcy Court held that its issuance of the Sale Order, on Debtor's motion for such an order, effectively modified the automatic stay to allow for the sale of the Property "free and clear of all liens," thus, permitting the City's receipt and retention of sale proceeds to pay off all recorded liens.  This Court agrees.

As stated, by motion, Debtor requested the Bankruptcy Court's permission to sell the Property, "free and clear of all liens," pursuant to the terms of the Sale Agreement.  (B.R. Ex. 10, Stipulation of Facts at ¶12, and attached Ex. A, Debtor's Motion to Sell Real Estate).  The Bankruptcy Court granted Debtor's motion by Order dated July 19, 2005 (the "Sale Order"), which expressly provided:

> it is hereby ORDERED that the Debtor is granted permission to sell a certain parcel of real estate, namely a vacant lot located at 1015 South 18th Street, Philadelphia, PA, 19146 ("the Lot"), to Christopher Ming and/or Associates for $100,000, free and clear of all liens, pursuant to the terms of the Agreement of Sale attached to the Motion as Exhibit "A," with the proceeds to be distributed to all taxes and other unavoidable liens of taxing authorities against the Property, and any additional settlement costs chargeable to the Debtor, with any remainder payable to the trustee. The proceeds of the sale shall be retained by the trustee into an account to be paid to filed and allowed claims and his commissions, and the balance shall be paid to the Debtor. The title clerk shall fax a completed HUD-1 or settlement sheet from the closing directly to the trustee immediately upon the close of the settlement, and the trustee shall promptly notify the title company of his approval or objections to the sums to be disbursed. Upon trustee approval, the title clerk shall fax a copy of the disbursement check to the trustee, and shall immediately transmit the actual disbursement check to the trustee by overnight courier.
>
> It is further ORDERED that, after the Lot is sold and taxes on the Lot are paid, the amounts in the proofs of claim against the Lot filed by Wachovia Bank, N.A. ("Wachovia") in the amount of $4204.20, per Exhibit "B" to the Motion, and the City of Philadelphia in the amount of $1134.86, per Exhibit "C" to the Motion, shall be deleted from those respective proofs of claim.

(*Id*., Stipulation of Facts at ¶13, and attached Ex. B).

By its plain and ordinary meaning, the Sale Order authorized the sale of the Property "free and clear of all liens," as was expressly requested by Debtor in his motion, and as required by the agreement of sale. (*Id*.). Moreover, the Sale Order expressly provided, in part, that the Sale Proceeds were to be "distributed to all taxes and other unavoidable liens of taxing authorities against the Property." Neither Debtor nor the Trustee objected to the provisions of the Sale Order. To the contrary, Debtor went forward with the authorized sale of the Property, on the terms included in the Sale Order. At the settlement closing held on October 21, 2005, Debtor received a copy of the Settlement Statement from the title company which listed all of the liens Debtor now challenges. The amount of each of those liens was listed in the column

entitled, "Paid From Seller's Funds at Settlement." Again, Debtor did not object to any of the liens or the fact that these liens would be paid from the Sale Proceeds. Four days later, the title company delivered the Settlement Checks to the City.

All of the payments received by the City were on account of unavoided liens held by the City, in its taxing authority. As such, these payments were expressly authorized by the Sale Order. As stated by the Bankruptcy Court, under these circumstances, it would be absurd to hold the City in contempt for violating the automatic stay when it merely received and retained the now challenged payments in satisfaction of its recorded liens, a payment clearly authorized by the Bankruptcy Court's Sale Order. More so, when the Sale Order, which was entered upon Debtor's motion, effectively modified the automatic stay to allow for the sale of the Property to a buyer, "free and clear of all liens," for an amount in excess of the filed proofs of claim and other liens against the Property. Thus, the City's receipt and acceptance of payment of its unavoided liens from the settlement proceeds was proper and did not violate the automatic stay provisions.

### *Debtor's Challenge to the 2004 Judgment*

Though not addressed in the Bankruptcy Court's written memorandum decision, Debtor argues that the recorded Municipal Court Judgment CE-04-07-73-005 (the "2004 Judgment") was itself a violation of the automatic stay. It appears from the sparse record presented before the Bankruptcy Court,[5] and the discussion by counsel and the Bankruptcy Court, that the 2004 Judgment was a "code-enforcement judgment that [the City] entered post petition." (B.R. Ex. 11, Bankr. Tr. 157). During closing arguments, the Bankruptcy Court inquired whether any type

---

[5] The sparsity of the record is largely, if not solely, attributable to the fact that Debtor brought this case nearly eight years after the Sale and the closing of his bankruptcy case. City witnesses testified that as part of their routine document retention policies, much of the underlying documentation for these liens and judgments was purged.

of exception to the automatic stay existed for code-enforcement judgments, (*Id*. at 162), and framed the issue as follows:

> Based on the pleadings it seems to me that there are two bankruptcy issues before me. The first is also relatively – involves an amount of money that is relatively small. And that is whether any of these payments violated the automatic stay. The only link that I can see in this to the automatic stay is the code-enforcement judgment that was entered in 2004 that resulted in the payment of $1,079.
>
> I don't know the answer to the question, whether it violated the stay. It seems to me there's a question of police power. And, as Mr. Scholl pointed out, there might be an issue as to who really has the burden of proof at this point on this. I'm not sure. And, on the one hand, you know, typically you'd say that if something happens after the automatic stay, it sure looks like it violates the stay. On the other hand, the mere fact that it's – it's code enforcement starts to make it seem like it's potentially police power, so don't have the answer to that, but that seems to me to be the second issue.
>
> If it violated the stay, the entry of the judgment, then I would be prepared to follow the logic of that, which would be to say that the 1,079 was paid in violation the – of the sale order, but I'm not sure of the outcome by that. And, as I said, it's a relatively small amount of money here.

(*Id*. at 167). Unfortunately, the issue was never addressed by the parties or resolved by the Bankruptcy Court. The City argues here, however, that the entry of the 2004 Judgment did not violate any of the restrictions of the automatic stay provision. This Court agrees.

Although Debtor does not assert in his amended complaint a specific claim for a violation of the automatic stay premised on the 2004 Judgment, he alleges that the City's actions, in general, violated 11 U.S.C. §362(a)(1-6).[6] (*See* Amend. Comp. at ¶32). However, none of these subsections of §362 apply to the 2004 Judgment.

---

[6] Nowhere does Debtor cite or refer in any way to subsections (7) or (8) of §362(a). Therefore, these subsections are not addressed herein.

Section 362(a) of the Bankruptcy Code (the automatic stay provision) describes specific actions that are precluded or "stayed" by the filing of a bankruptcy petition.  11 U.S.C. §362(a).  Subsections (1), (2), (5) and (6) of §362(a) prohibit actions with regard to claims or judgments against the debtor that either arose or were obtained "***before*** the commencement of the case." *See* §362(a)(1), (2), (5) and (6) (emphasis added).  Here, there is no evidence that the 2004 Judgment was for a claim that arose ***before*** commencement of the bankruptcy case.  To the contrary, by the assigned number of this judgment (CE-04-07-73-0059), it appears this claim arose ***after*** commencement of Debtor's bankruptcy case, *i.e.*, sometime in 2004.  As such, these subsections of the automatic stay provision do not apply.

Subsections (3) and (4) of §362(a) are limited to acts taken against "property of the estate."  *See* §362(a)(3) and (4).  Implicit in these provisions is the principle that the automatic stay only apples to actions against "property of the estate," and not to actions against property of the debtor.  *See In re Wei-Fung Chang*, 438 B.R. 77, 79-80 (Bankr. M.D. Pa. 2010).  Further, §362(c)(1) provides that the automatic stay of an act against "property of the estate" continues until such property is no longer property of the estate.  11 U.S.C. §362(c)(1).  In addition, §1327(b) provides that "the confirmation of a plan vests all of the property of the estate in the debtor."  11 U.S.C. §1327(b).  Hence, pursuant to 11 U.S.C. §1327(b) of the Bankruptcy Code, the Property revested in Debtor after confirmation and, thus, was not "property of the estate" at the time of either the entry of the 2004 Judgment or the Sale of the Property.  Indeed, the Confirmed Plan provides as much:  "the property of the estate shall revest in the Debtor upon confirmation and that the Debtor shall have the sole right to use and possess said property."  Debtor's plan was confirmed on April 29, 2003.  At that time, the Property had revested in the Debtor.  As such, subsections (3) and (4) of §362(a) also do not apply.  *Cf., In re Clouse*, 446

11

B.R. 690, 703 (Bankr. E.D. Pa. 2010) (holding that after plan confirmation, all pre-petition property of the estate vests back in the debtor under §1327(b)); *In re Wei-Fung Chang*, 438 B.R. at 85 (holding that a creditor's filing of a mechanic's lien against property that revested in the debtor after confirmation of plan did not violate automatic stay).  In light of this analysis, Debtor's reliance on a violation of §362(a)(1-6) is misplaced.

### *Debtor's Claim for Violation of the Confirmed Plan*

Debtor next argues that the City's retention of the disputed payments following the sale of the Property violated the Confirmed Plan.  Specifically, Debtor argues that because the City filed a proof of claim that omitted the claims for the underlying liens at issue, and did not file any separate proofs of claim for these liens, the City's receipts from the Sale Proceeds should have been limited to the amount of the allowed proof of claim attributable to the Property and provided for in the Confirmed Plan, and nothing more.  Again, Debtor's argument is premised on the fact that the City's proof of claim did not include the liens and judgments against the Property listed on the settlement sheet and subsequently extinguished by the Sale Proceeds.  For the reasons articulated by the Bankruptcy Judge, Debtor's argument lacks merit.

As the Bankruptcy Court noted, it is well-established that the holder of a secured claim need not file a proof of claim, but may, instead, elect to have its lien(s) pass through a bankruptcy case unaffected.  *See e.g.*, *In re Mansaray-Ruffin*, 530 F.3d 230, 235-36 (3d Cir. 2008); *Lellock v. Prudential Ins. Co. of America*, 811 F.2d 186, 188 (3d Cir. 1987) (holding that "although an underlying debt is discharged in bankruptcy, the lien created before bankruptcy against property to secure that debt survives."); *In re Hill*, 286 B.R. 612, 615 (Bankr. E.D. Pa. 2002) ("[A] secured creditor in a Chapter 13 case is not required to file a proof of claim may choose to ignore the bankruptcy proceeding and look to its lien for satisfaction of the debt.");

*Coffin v. Malvern Fed. Sav. Bank*, 189 B.R. 323, 326-27 (E.D. Pa. 1995); *In re Vandy, Inc.*, 189 B.R. 342, 349 (Bankr. E.D. Pa. 1995); *Esposito v. Title Ins. Co. of PA* (*In re Fernwood Markets)*, 76 B.R. 501, 503 (Bankr. E.D. Pa. 1987).[7] A lienholder's failure to file a proof of claim "has no legal significance" and "does not result in the loss of its lien." *In re Mansaray-Ruffin*, 530 F.3d at 236 n. 4. The Third Circuit Court of Appeals described this pass-through rule as follows:

> [T]he general rule [is] that liens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property. For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation.

*In re Mansaray-Ruffin*, 530 F.3d at 235 (quoting *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir. 1995)).

As stated, the City filed an allowed proof of claim for certain unpaid real estate taxes, and water and sewer liens held by the City. The City, however, did not include in its proof of claim, or file separate proofs of claim for the liens/judgments that are the subject of this litigation. As such, under the law described above, these liens/judgments on the Property passed through Debtor's bankruptcy proceedings unaffected.

Debtor has provided no law – and this Court has found none – to support his contention that a secured creditor that holds numerous liens or judgments against a debtor's property but files a proof of claim for only some (but not all) of the liens/judgments is precluded from recovering on the other liens/judgments from the sale proceeds resulting from the sale of the

---

[7] Notably, in the *Fernwood Markets* matter, former Bankruptcy Judge David A. Scholl, Jr., who represents Debtor in this matter, held that the failure of a secured creditor to file a timely proof of claim did not prevent a lien from passing unaffected through the bankruptcy and attaching as a valid lien against the proceeds from the sale of debtor's realty. *In Re Fernwood Markets*, 76 B.R. at 503-04.

debtor's encumbered property. Indeed, the well-settled law described above pertaining to the passing through of liens not made part of a confirmed plan suggests otherwise. As Debtor's Confirmed Plan made no provision whatsoever for the City's secured claims at issue, and Debtor took no affirmative action to avoid them, the City's associated liens and recorded judgments passed through Debtor's bankruptcy case unaffected. In light of the foregoing, this Court finds that the Bankruptcy Court did not commit reversible error when it held that the City's receipt and retention of the challenged portions of the Sale Proceeds did not violate the terms of Debtor's Confirmed Plan.

### *Debtor's Claims with Regard to the Checks Issued to the School District*

Debtor also takes issue with the Bankruptcy Court's conclusion that his claims with respect to the two checks issued to the School District of Philadelphia lack merit because Debtor did not include the School District as a party/defendant in this action. Debtor's exception is misplaced. There is no dispute that the School District of Philadelphia is a separate and distinct entity from the City, and that the checks at issue were made payable to the School District of Philadelphia. In this action, Debtor asserted all of his claims against the City and did not assert any claims against, or name as a defendant, the School District of Pennsylvania. As such, the Bankruptcy Court's conclusion that Debtor has sued the wrong party for this particular claim is correct.

### *Debtor's Challenges to the Validity of the Underlying Liens*

Debtor also contends that the Bankruptcy Court erred in concluding that Debtor had failed to adequately substantiate any challenge to the validity of the underlying liens/judgments. At oral argument, the Bankruptcy Court stated:

> In my mind it's very clear, to the extent that the debtor wishes to
> raise any arguments about the invalidity of the liens that were of

> record because the moneys were not actually owed at the time, that in effect is a refund request rather than a claim that something inappropriate happened tied to a provision of the Bankruptcy Code. And I will not consider that today as part of this case. It was simply not pled. Maybe that there would be a complete statute of limitations defense to that anyway. But I'm not even going to reach that issue, because I consider it to be outside the pleadings.

(B.R. Ex. 11, Trial Tr. at 166).

Based upon a review of the record, this Court finds no error with the Bankruptcy Court's findings and conclusions. First, nowhere in Debtor's amended complaint does he set forth any challenge to the validity of any of the underlying liens. Rather, Debtor merely alleges that the City violated the Confirmed Plan and/or the automatic stay by accepting and retaining payments from the Sale Proceeds that effectively paid off the liens. As such, a challenge to the validity of the liens was not properly made a part of this proceeding and, thus, need not be addressed.

However, even if properly raised in Debtor's amended complaint, the Bankruptcy Court's findings regarding the validity of the liens/judgments are sound. To support his challenge, Debtor relies primarily on his own testimony: (1) that he regularly visited the City's Municipal Services Building to inquire as to any business and/or property taxes and was never advised of any outstanding municipal claims; (2) that the City wrongfully damaged and then tore down one of his properties; and (3) that he resolved any issues with unpaid business taxes by filing amended tax returns. As found by the Bankruptcy Court, however, Debtor failed to adequately and persuasively connect his testimonial description of events to the liens and/or judgments at issue. Debtor's testimony as to these issues was confusing and inconsistent, in particular that directed to his purported filing of amended tax returns. Indeed, during his testimony, Debtor readily admitted that he got his various taxes "mixed up a little bit sometimes." In light of the confusing testimony, the Bankruptcy Court's rejection of Debtor's challenge to the validity of the liens/judgments was sound.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's Order of June 18, 2015, which entered judgment in favor of Defendant/Appellee the City of Philadelphia, is affirmed.

NITZA I. QUIÑONES ALEJANDRO, USDC J.